IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEIRDRE MICHELLE WILSON, )
)
    Plaintiff, )
)
v. ) NO. 3:04-0894
) JUDGE HAYNES
STATE OF TENNESSEE )
DEPARTMENT OF HEALTH, )
)
    Defendant. )

## MEMORANDUM

Plaintiff, Deirde Michelle Wilson, filed this action under Title VII ("Title VII") of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. against the Defendant, State of Tennessee Department of Health, her former employer. Plaintiff's claims are that she was constructively discharged and subject to disparate treatment based upon her race during her employment with the Defendant and that she was the victim of retaliation after she filed a grievance. Plaintiff's disparate treatment claims are that: (1) she had excessive work demands outside her job description; (2) that she prevented from transferring or obtained other employment; (3) that her supervisor spoke harshly to her; and (4) that she was docked pay for unapproved leaves of absence. The Defendant filed an answer denying Plaintiff's allegations and the parties proceeded with discovery.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 42), contending, in sum, that Plaintiff cannot identify a comparable employee who engaged in comparable conduct, and who was subject to the better treatment than Plaintiff. The Defendant also contends that Plaintiff was not constructively discharged and that Plaintiff's two-days suspension from work was for legitimate reasons. Further, the Defendant's decision not to rehire Plaintiff after Plaintiff's resignation was for legitimate reasons and did not preclude Plaintiff from employment

with other state agencies nor did the Plaintiff's supervisor discuss Plaintiff's work with any other state agency/or any other entity.

Plaintiff's response admits many of the facts about her employment with the Defendant, but asserts that she had justifications for her challenged job conduct. (Docket Entry Nos. 58 and 61). Plaintiff, however, insists that material factual disputes exist that preclude an award for summary judgment. (Docket Entry No. 58).

## A. Findings of Fact[1]

Plaintiff was a Public Health Education Officer, with the Tennessee Breast and Cervical Screening Program in the Tennessee Department of Health ("TDH") from November 6, 2000 until May 27, 2005. (Docket Entry No. 46, Attachment, thereto Plaintiff's Deposition at pp. 21-23), and (Docket Entry No. 61, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 1). From June 7, 2003, through May, 2005, the program had 6 full-time employees, two nurses, one accountant, one public health educator officer, an employee who specialized in statistics and Mary Jane Dewey, the supervisor. Id. at ¶ 2. Dewey became the supervisor of the program on April 1, 2002. Id. at ¶ 3).

In about October 2002, Dewey was informed that this program would be losing $500,000 in federal funds due to the program's failure to meet certain standards. Id. at ¶ 4. Plaintiff notes that

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Given the proof and the relevant law, the Court concludes that there are not any material factual disputes and this section constitute findings of fact under Fed.R.Civ.P. 56(d).

2

the Program has lost unspecified significant federal funding yearly since its inception. Id. Dewey sought to increase the program's productivity to regain federal funding. Id. at ¶ 5. To increase productivity, the Program's employees were assigned new or additional office duties. Id. at ¶ 6. Plaintiff's additional office duties included filing, entering data and returning telephone calls from members of the public who were interested in services. (Dewey Affidavit at pp. 11-12).

Plaintiff objected to performing filing, entering data or returning telephone calls from public callers. Id. at ¶ 8. As to Plaintiff's objections to assignments from Dewey as inconsistent with her job description, Plaintiff's job description includes the following: "NOTE: Class specifications are descriptive only and not restrictive; they shall not be construed as declaring the extent or what the duties and responsibilities shall be, as limiting or in any way modifying the powers of the appointing authority to assign duties or to direct or control all employees under his/her supervision, the typical tasks shall not be held to exclude other not mentioned that are similar kind or quantity." (Plaintiff Deposition, Exhibit 1 thereto). Dewey explained to Plaintiff that Plaintiff could be required to perform office duties that are not explicitly in her job description, such as filing and data entry. (Docket Entry No. 46 at ¶¶ 12 and 13, Dewey Affidavit). Other employees, including Dewey, performed such tasks. Id. According to Plaintiff, Dewey was also verbally and physically abusive when Plaintiff objected to these assignments. (Docket Entry No. 61, Exhibit 5, thereto).

State officials outside of TDH complained about Plaintiff's job performance. The facilities manager in the Tennessee Department of General Services complained about Plaintiff's behavior. (Plaintiff Deposition, Exhibit 18 and Dewey Affidavit at ¶ 42), as did three other outside vendors about Plaintiff's unbecoming conduct. (Plaintiff Deposition, Exhibit 18 and Dewey Affidavit ¶ 42). An employee of the Bureau of Administrative Services complained about Plaintiff "being

3

uncooperative and argumentative" and failing to "forward documents within the set deadlines." (Plaintiff Deposition, Exhibit 18 and Dewey Affidavit at ¶ 42).

Plaintiff had attendance problems. Employee absences from work required prior notice and Dewey's prior approval. Id. at ¶ 9. Except for one instance, Plaintiff did not inform Dewey prior to taking leave or arriving late for work. Id. at ¶ 10 and Exhibit 7 thereto). Plaintiff was late to work three (3) to four (4) days a week, but Plaintiff notes that her late times were approximately five minutes past the six-minute grace period for reporting to work. Id. at ¶ 11. Plaintiff was required to notify Dewey or her designee upon her arrival in the office, id. at ¶ 12, due to her attendance problems. Id. at ¶ 13. Plaintiff often failed to notify anyone upon her arrival and continued to arrive late on a regular basis. (Docket Entry No. 46, Attachment No. 2, Dewey's Affidavit at ¶ 20).

On February 19, 2003, Plaintiff work time was 8:00 a.m., but Plaintiff would arrived at 8:20 a.m. (Docket Entry No. 61, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶¶ 21-22). Plaintiff explained that her tardiness "was attributed to removing a hungry, stray kitten from inside my home. Because of its size, the kitten was able to hid, and I literally had to search for it. I refused to leave it [sic] my home all day and take a chance of it damaging my property via defection and clawing. I took the other three kittens to the Nashville Humane Society on Monday, February 10th. The I experienced a slight delay in traffic." Id. at ¶ 23.

From July, 19, 2004 through July 30, 2004, Plaintiff arrived late for work on the following dates:

July 21, 8:16 a.m.

July 22, 8:17 a.m.

July 23, 8:11 a.m.

4

July 26, 8:17 a.m.

July 27, 8:18 a.m.

July 28, 8:14 a.m.

July 29, 8:12 a.m.

July 30, 8:13 a.m.

Id. at ¶ 18.

According to Dewey, all employees of the Program were held to the same standards regarding time and attendance. (Docket Entry No. 45, Dewey Affidavit at ¶ 26). Plaintiff asserts that "this information is not undisputed" and cites her Exhibit 15 that is her letter to Dewey about her right to use "make-up time" to cover her absences. Dewey explains that she permitted Plaintiff to work "make-up time", but TDH stopped this departmental policy as inconsistent with the State's government policy. (Docket Entry No. 45, Dewey Affidavit at ¶ 27). Dewey then informed each employee that"make up time" would no longer be available for attendance deficiencies. Id. In opposition, Plaintiff only cites her letter to Dewey. (Docket Entry No. 61, Plaintiff's Exhibit 61thereto).

Plaintiff's proof about other employees with attendance issues refers only to Lilly Melton, a co-employee in the program. Specifically, Plaintiff testified:

> Q. Okay. And it appears that in those five paragraphs basically the essence of that complaint is that Ms. Dewey gave approved leave to a Caucasian female, Lilly Melton, who in your words was frequently absent from the office. Is that an accurate statement of this complaint?
>
> A. Yes.
>
> Q. Do you have any knowledge for the reason for Ms. Melton's absence?
>
> A. She told the temporary employee Dee Butler that, you know, she would have to - -

> that she would be getting ready for dates and stuff like that but she would state otherwise and that, you know, she was not docked.
>
> Q. Did she - -
>
> A. In essence.
>
> Q. Did she tell Dee Butler that that's the reason she gave Ms. Dewey was that she was getting ready for date?
>
> A. No. That was her reason but she would say otherwise but she was not being docked.
>
> Q. But to Ms. Dewey's knowledge Ms. Melton was telling Ms. Dewey other reasons for being late or absent.
>
> A. Yes. But Dewey was aware of the two-hour lunch - - the extra long lunch breaks that Ms. Melton was taking. She was well aware of that.
>
> Q. Do you know the process Ms. Melton went through to request her leave?
>
> A. No. According to what she told Ms. Butler that I just told her I need to leave early or I'm not coming - - I called in. It was never, you know communicated to me that there was an official process.
>
> Q. Okay. Do you know if Ms. Melton ever let Ms. Dewey know beforehand that she was going to be late or absent?
>
> A. I'm aware that there were a few times that she called from home but sometimes she didn't know.
>
> Q. Okay. Do you know that from firsthand knowledge or from Ms. Butler?
>
> A. I witnessed some myself and other, you know, I heard.
>
> Q. You witnessed her calling from the house?
>
> A. No. When she would come in and say, well, you know, I just talked to Mary Jane. I just let her know that I was late or, you know, I didn't call or - -

(Docket Entry No. 46, Attachment 1 thereto, Plaintiff Deposition at pp. 152-154).

Plaintiff insists that her lower lumbar injury in October 2002, that she suffered while working on bulk statewide mailing caused of her lateness. Id. at Exhibit 9. Plaintiff insists that she provided

6

doctor statements and her medical records, but the Defendant refused to recognize them. Id. at Exhibits 1-10 and 11. These circumstances increased Plaintiff's hypertension. Plaintiff asserts that she was not provided equipment to transport display materials to events sites, and received duties requiring lifting. Plaintiff was slower than other employees in performing her assigned duties. Id. at ¶ 8. Plaintiff was not required to come into work when she was sick, but was encouraged to come to work if physically able. (Docket Entry No. 45, Dewey Affidavit at ¶ 28).

On February 28, 2003, Dewey gave Plaintiff a written and oral warning about Plaintiff's time and attendance issues and her failure to complete important projects timely. (Docket Entry No. 45, Dewey's Affidavit at ¶ 34). On March 10, 2003, Plaintiff filed a grievance with the Department of Health. (Docket Entry No. 46, Attachment thereto, Plaintiff's Deposition at Exhibit 6. Plaintiff's April 3, 2003 administrative charge of discrimination and retaliation lists the earliest date of discrimination as April 5, 2002 and the latest date as March 28, 2003. Id. On April 11, 2003, Dewey issued Plaintiff a written warning for her continued failure to arrive at work timely. Dewey asserts she was unaware of Plaintiff's April 3, 2003 charge of discrimination and retaliation. Dewey's Affidavit at ¶ 36.

On August 16, 2004, Plaintiff received notice of a recommendation suspending her for two days without pay and stating that Plaintiff had violated the Rules of the Tennessee Department of Personnel Chapter 1120-10-06.

    (18)    Refusal to accept a reasonable and proper assignment from an authorized supervisor (insubordination).

    (4)    Failure to maintain satisfactory and harmonious working relationships with the public and fellow employees.

7

Plaintiff's Deposition at Exhibit 18. Plaintiff contested the suspension and a due process hearing was held on December 17, 2004. Dewey did not discuss with anyone regarding the potential employment of Plaintiff. Id. at ¶¶ 29 and 30.

### B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational

8

trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v.

9

McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence</u>

10

<u>unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.</u>'

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that

[I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d. 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." <u>Webster's Third New InterNational Dictionary</u> (1986).

11

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an

12

element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Title VII of the Civil Rights Act of 1964, states, in relevant part, that it shall be an unlawful employment practice for an employer

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ....

42 U.S.C. § 2000e-2(a)(1).

13

In the absence of direct evidence of discrimination, Title VII claims are subject to a three-part, burden-shifting analysis: (1) the plaintiff must establish a prima facie case of discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Accord Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). The burden of persuasion remains with the plaintiff at all times. Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir. 1990).

For disparate treatment Title VII claim, the plaintiff's prima facie showing of disparate treatment requires proof that:

1. Plaintiff is member of a protected class;
2. Plaintiff suffered an adverse employment action;
3. Plaintiff was qualified for the position;
4. Plaintiff was treated differently than similarly-situated employees outside of the protected class for the same or similar conduct.

Abeita v. Transamerica Mailings, Inc., 159 F.3d 246, 252 (6th Cir. 1998). See also McDonnell Douglas Corp., 411 U.S. at 802. For discriminatory discharge claims, the McDonnell Douglas paradigm is slightly modified. See Morvay v. Maghielse Tool and Die Co., 708 F.2d 229, 233 (6th Cir. 1983); Potter v. Goodwill Indus., 518 F.2d 864 (6th Cir. 1975). To make a prima facie case of discriminatory discharge, the plaintiff must show that her discharge was "without valid cause, and that the employer continued to solicit applications for the vacant position." Id. at 865.

As to any disparate treatment claim, under Title VII standards, Plaintiff must show that the comparable employees are "similarly situated in all respects." Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999) (quoting Mitchell, 964 F.2d at 583). "'Precise equivalence in culpability between employees' is not required. Rather, Plaintiff must simply show that the employees were

14

engaged in misconduct of 'comparable seriousness.'" Id. (quoting Harrison, 80 F.3d at 1115 & McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 n. 11 (1976)). Thus, the similarly-situated employees with whom Plaintiff seeks to compare her treatment must have "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell, 964 F.2d at 583.

The Sixth Circuit warned in Ercegovich v. Goodyear Tire and Rubber Co. that Mitchell should not be read so narrowly as to require a plaintiff to be identically situated to the non-protected employee in every single aspect of their employment. Ercegovich, 154 F.3d 344, 353 (6th Cir. 1998). For with such a narrow reading, "a plaintiff whose job responsibilities are unique to his or her position will never successfully establish a prima facie case...." Id. The employee and his similarly situated counterparts only need be similar in "all of the relevant aspects." Id. at 352.

Here, Plaintiff is a member of the protected class and she suffered an adverse job action with her two-days suspension. Plaintiff's proof, however, lacks any proof of comparable employer who is white and was similarly situated as to attendance. The Defendants also note Plaintiff's failure to identify a TDH or program employee who has similar attendance problems' or who had failures to provide prior notice to her supervisors; or who refused to follow verbal and written directives; or who failed to maintain a harmonious relationship with co-workers and outside vendors. (Plaintiff Deposition, Exhibit 18 and Dewey Affidavit at ¶ 33, 35).

The only adverse employment action suffered by Plaintiff was in 2005 when she was suspended for two days without pay for violations of State policy including refusal to attend a meeting, failure to complete job duties, engaging in disrespectful, disruptive conduct and

15

insubordinate behavior, offending cited three private vendors, and continuing to park in reserved and handicapped parking spaces despite repeated warnings from other State departments. (Plaintiff Deposition, Exhibit 18).

As to the disparate work assignment, Plaintiff's job description is clearly not as limited as Plaintiff contends. The undisputed facts are that all other employees also reviewed similar work assignments as Plaintiff. All employees were made to do filing and return telephone calls. (Docket Entry No. 45, Dewey Affidavit at ¶ 12). Plaintiff was not singled out for additional task. Id. at ¶ 10. Other employees accepted the additional responsibilities. Id. Plaintiff's view was that "[i]f I'm going to be paid "X" amount of dollars to do what's on the job description, I would rather stick more closely to what's actually on the job description than to constantly be assigned things - - to perform tasks and assignments that were totally not related to that just because I had the ability to do so." (Plaintiff Deposition at p. 110). Plaintiff's job description authorized these additional duties.

While Plaintiff was qualified for the position at the time she was hired, Plaintiff has not presented proof that the Defendants' stated reasons for her suspension were pretextual. The deficiencies in Plaintiff's conduct on the job are valid causes for suspension.

Assuming Plaintiff's contentions were supported by the proof and assuming she has presented a prima facie showing of disparate treatment, "the burden... shift[s] to the defendant articulate some legitimate, nondiscriminatory reasons for the plaintiff's rejection." McDonnell Douglas, 411 U.S. at 802. "The defendant must clearly set forth, through introduction of admissible evidence, reasons for its actions...." Burdine, 450 U.S. at 255. The defendant "need not persuade the [trier of fact] that it was actually motivated by the proffered reasons," 450 U.S. at 254, but "only produce admissible evidence which would allow the trier of fact to rationally conclude that the

16

employment decision was not motivated by discriminatory animus." Id. at 257. The defendant's burden is, thus, one of production; not persuasion. Id. at 254-55. Although the burden of production shifts to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [her] remains at all times with the plaintiff." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

Once the defendant meets this burden, the plaintiff must show that the employer's proffered reason is pretextual. Id. "It is not enough to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." Id. at 519. But "[a] plaintiff does not need to introduce additional evidence of discrimination to prevail on the merits." Kline v. Tennessee Valley Auth., 128 F.3d 337, 347 (6th Cir. 1997). Discrimination can be found once a prima facie case is established along with the disbelief of the proffered reasons for the adverse employment action. Id. To challenge the employer's explanation for an adverse employment action, the plaintiff must show, by a preponderance of the evidence, "either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action." Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 883 (6th Cir. 1993).

Analyzed as a disparate treatment, the Court concludes that Plaintiff has failed to present any proof to show that the Defendant's actions were a pretext for racial discrimination.

As to Dewey's harsh comments, Plaintiff's proof does not meet the standard required for a hostile work environment. See Harris v. Forklift Sys., In., 510 U.S. 17, 21-23 (1993). Personality conflicts do not violate Title VII. Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir. 1982). There is not any evidence of a racial animus by Brewer. The complaints about Plaintiff's

17

conduct from non-department persons and Plaintiff's objection to accept assignments as permitted by her job description no doubt gave rise to tensions at Plaintiff's work. The Court, however, does not discern any racial basis necessary for that a Title VII violation is presented.

As to Plaintiff's retaliation claim, Plaintiff has not presented any proof to establish Dewey's awareness of her administrative grievance nor of any causal relationship between Plaintiff's grievance and her two-days suspension that is required for a Title VII retaliation claim. Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir. 1990). "Temporal proximity alone is insufficient to establish a causal connection for a retaliation claim." Little v. BP Exploration & Oil Co., 265 F.3d 357, 363-64 (6th Cir. 2001). The two-days suspension would not appear to be sufficient to deter any employee's pursuit of Title VII claims.

For these reasons, the Defendant's motion for summary judgment (Docket Entry No. 42) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the __26th__ day of September, 2007.

WILLIAM J. HAYNES, JR.
United States District Judge